**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

KALITTA AIR, LLC
818 Willow Run Airport
Ypsilanti, MI 48198,

        Plaintiff,

    v.                                  Civil Action No. _____

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, AIRLINE DIVISION
25 Louisiana Avenue N.W.
Washington, DC 20001

and

AIRLINE PROFESSIONALS ASSOCIATION OF THE
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL UNION NO. 1224
2754 Old State Route 73
Wilmington, OH 45177,

        Defendants.

_____

**COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD**

Plaintiff Kalitta Air, LLC ("Plaintiff" or "Kalitta"), by and through its attorneys, brings this action under the Railway Labor Act, 45 U.S.C. § 153 First (q) or, in the alternative, the Federal Arbitration Act, 9 U.S.C. §§ 10 and 11, for partial vacatur of the Arbitration Award issued on December 26, 2017 (the "Arbitration Award") in the arbitration between Plaintiff and Defendants International Brotherhood of Teamsters, Airline Division ("IBT") and Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224 ("Local 1224") (collectively, "Defendants"). In support thereof, Plaintiff states as follows:

## THE PARTIES

1.      Plaintiff Kalitta is a cargo air carrier located at 818 Willow Run Airport, Ypsilanti Township, Michigan.

2.      Defendant International Brotherhood of Teamsters, Airline Division ("IBT") is a union certified to represent pilots at Kalitta through Defendant Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224 ("Local 1224"), which is a local of the IBT Airline Division located at 2754 Old State Route 73, Wilmington, OH.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and under the Federal Arbitration Act, 9 U.S.C. §§ 10 and 11.

4.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), 45 U.S.C. § 157 Third (f), 45 U.S.C. § 159 Second, and 9 U.S.C. § 10(a), as the arbitration and a substantial portion of the events underlying this action took place in Washington, D.C.

## STATEMENT OF FACTS

5.      Beginning in 2011, Plaintiff and Defendants commenced negotiations for a 28-Section Amended Collective Bargaining Agreement ("CBA") to govern the terms and conditions of employment for Plaintiff's pilots. A true and correct copy of the CBA is appended hereto as Exhibit A. Relevant to this matter, the CBA outlines duty time limitations and mandates minimum rest times for pilots according to crew size, flight time, and various other factors.

6.      In the summer of 2014, negotiations stalled. Defendants requested that the National Mediation Board ("NMB") assign a mediator to the case. Accordingly, Mediator Jack Kane joined the negotiations. Those negotiations continued through the summer of 2016. At that

time, Defendants requested that the NMB grant permission for Defendants to orchestrate a strike under the provisions of the Railway Labor Act ("RLA"). In an attempt to resolve the dispute, the NMB ordered Plaintiff and Defendants to meet with then-NMB Chairman Harry Hoglander in Washington, D.C.

7.      During negotiations overseen by Chairman Hoglander, Plaintiff and Defendants reached an agreement on all provisions of the CBA, with the exception of a single subsection: augmented crews' duty time limitations under Section 18.C.3.b. *See* Ex. A at 141. Section 18.C is entitled "Duty Time Limitations;" as explained therein, augmented crews are those comprised of four, five, or six crewmembers. *Id.* at 141. Plaintiff and Defendants agreed to all provisions contained within Section 18.D, entitled "Minimum Rest Periods," which sets out minimum rest periods for crews of all sizes. *See id.* at 142-43. In relevant part, Section 18.D.2.d provides, "[f]or a Duty period in excess of twenty-four (24) consecutive hours, the Minimum Rest Period shall be sixteen (16) consecutive hours." *Id.* at 143.

8.      When the parties were unable to reach an agreement on the terms of Section 18.C.3.b, Chairman Hoglander summoned Plaintiff's senior management representatives, Pete Sanderlin and George Kelsey, and Defendants' senior representative, Captain David Bourne. Pete Sanderlin serves as Director of Operations for Plaintiff, and George Kelsey as Corporate Secretary and outside general counsel for Plaintiff. Captain Bourne is Director of Defendant IBT's Airline Division. In a meeting overseen by Chairman Hoglander, Plaintiff and Defendants entered into a confidential agreement that maximum duty times for augmented crews would be: twenty-four (24) hours for four-person crews, twenty-six (26) hours for five-person crews, and twenty-eight (28) hours for six-person crews. This was the last open issue in the CBA.

9.      Captain Bourne was concerned that Defendant Local 1224 would object to this agreement. Chairman Hoglander suggested that Plaintiff and Defendants conduct a single interest arbitration to formalize the aforementioned agreed-upon terms. Chairman Hoglander offered to recommend an arbitrator who would enter an award reflecting the parties' agreement.

10.     Plaintiff was hesitant to agree to an arbitration with a pre-determined outcome. Plaintiff was also unfamiliar with interest arbitration proceedings. However, Chairman Hoglander assured Plaintiff that such arrangements were not unusual. Further, Defendants' representative, Captain Bourne, again advised Plaintiff and Chairman Hoglander that an agreement to "arbitrate" Section 18.C.3.b was essential to providing Defendant IBT Airline Division with "cover" against members who might object to the agreed-upon terms. Plaintiff agreed to conduct a single interest arbitration with a guarantee that the award would reflect the terms to which both parties had agreed.

11.     After the Hoglander meeting had concluded, counsel for Defendant Local 1224 sent a letter to Plaintiff requesting to add two references to "rest provisions" to the arbitration agreement. Specifically, Defendant Local 1224 requested that paragraph one of the arbitration agreement note that Plaintiff and Defendants would conduct a single interest arbitration regarding "duty time period limits and compensatory rest provisions," while paragraph four enabled the arbitrator to consider "duty time period limitations and compensatory rest provisions under Section 18.C.3.b." Plaintiff assumed that Defendant's counsel was not privy to the specific terms of the Hoglander agreement, as Plaintiff and Defendant had agreed to keep the details confidential.

12.     In an effort to finalize the CBA, the terms of which had taken nearly five years to negotiate, Plaintiff agreed to add Defendant's requested two "rest" references. Plaintiff did not

foresee any issues: Chairman Hoglander and Defendants had assured Plaintiff that the arbitrator

would only consider duty time under Section 18.C.3.b. However, the jurisdiction of the arbitrator

was limited in the agreement to determining duty time under Section 18.C.3.b.

13.     On November 3, 2016, Captain Bourne sent a letter further clarifying Defendants'

desire to limit the arbitration to the issue of duty provisions under Section 18.C.3.b. Captain

Bourne stated: "[T]he arbitrator's decision will be the final award on duty time limits, period."

14.     On November 9, 2016, Counsel for Defendant Local 1224 sent a letter that again

confirmed both parties' agreement to limit the arbitrator's jurisdiction to deciding duty time

limits under Section 18.C.3.b. In response to Counsel for Plaintiff's request for additional

language circumscribing the arbitrator's authority, Defendant Local 1224's Counsel replied:

"The additional language proposed by Company is redundant and unnecessary because

Paragraph 1 already describes the arbitrator's jurisdiction and authority regarding 4, 5 and 6 pilot

crews under Section 18.C.3.b…. [the] 'question to be presented' to the arbitrator already

accomplishes the parties' purposes."

15.     In December of 2016, the pilots overwhelmingly ratified the tentative CBA.

16.     On December 20, 2016, the parties executed the CBA, including the agreement to

arbitrate. *See* Ex. A. At all times, Plaintiff only agreed to give the arbitrator jurisdiction to decide

the duty time for augmented crews.

17.     Appended to the CBA is that agreement, entitled Interest Arbitration Letter of

Agreement ("Arbitration Agreement"). See Ex. A at 229-31. In relevant part, the Arbitration

Agreement provides:

>     a.   The arbitrator shall have the jurisdiction and authority to award duty period
>
>          limits for 4, 5 and 6 pilot crews. *Id.* at 229.

b.   The question presented to the arbitrator shall be: What are the duty period

limitations and compensatory rest provisions under Section 18.C.3.b? *Id*. at

230.

18.     Chairman Hoglander recommended that Joshua M. Javits serve as arbitrator, and

the parties agreed. Mr. Javits, who is based in Washington, D.C., assured Charmain Hoglander

that he would issue an award reflecting the parties' agreed-upon duty times under 18.C.3.b.

19.     On August 24 and 25, 2017, Plaintiff and Defendants appeared before Arbitrator

Javits. For the first time, Defendants demanded concessions from Plaintiff to which Plaintiff had

never agreed.

20.     Defendants proposed that, under Section 18.C.3.b, augmented crews should have

a 20-hour duty period limit.

21.     Plaintiff's position was that, under Section 18.C.3.b, augmented crews should

have a maximum duty period of 30 hours.

22.     In an effort to compromise, Plaintiff agreed to twenty-four (24) hour duty times

for four, five, and six-person crews, but retained the right to increase duty times to 26 hours

under certain operating conditions.

23.     However, Plaintiff objected to Defendants' demand that Arbitrator Javits exceed

his authority to consider pilot rest provisions under Section 18.D.2.d. The Arbitration Agreement

does not reference that provision. Nevertheless, and in violation of the parties' Agreement,

Defendants requested a minimum rest period of 14 hours under Section 18.D.2.d and additional

rest when duty was extended up to 22 hours.[1]

---

[1] Arbitrator Javits' second draft award, appended hereto as Exhibit C, erroneously describes
Defendants' proposal as requesting minimum rest "under Section 18.D.2.c of the parties'

24.     Plaintiff again sought to compromise, suggesting that it might consider expanding the Arbitrator's jurisdiction to consider Defendants' minimum rest proposal if Defendants were willing to permit individual pilots to waive the 22-hour rest time. Plaintiff advised that, for many reasons, pilots might prefer the 16 hours of rest provided in the prior CBA. Additional rest time translates into lower pilot salaries due to reduced flying. It also forces pilots to spend longer periods of time in dangerous locations such as Mogadishu, a location to which Plaintiff flies. Plaintiff's pilots have expressly objected to remaining in such locations beyond the then-16-hour minimum rest requirement and have advised upper management of their preference for 16-hour rest times.

25.     Defendants refused to compromise, arguing that Plaintiff would pressure individual pilots to accept 16 hours of rest if the pilots were permitted to unilaterally waive the 22-hour rest requirement. Defendants insisted that individual pilots should have no authority over their own rest times and that Defendants alone could waive the same 22-hour rest time that the Defendants had suggested.

26.     On November 10, 2017, the parties submitted post-hearing briefs.  In accordance with the parties' agreement, Plaintiff limited its evidence to that which supported its claim for duty time limits under 18.C.3.b. However, Defendants argued that Arbitrator Javits should issue an arbitration award that exceeded his jurisdiction, requesting 22-hour minimum rest in violation of Section 18.D.2.d.

27.     Plaintiff never agreed to expand Arbitrator Javits' limited jurisdiction to consider Defendants' minimum rest time proposal. Plaintiff did not agree to expand the scope of the

---

collective bargaining agreement." Ex. C at 4. Defendants requested, and Arbitrator Javits issued, an award of minimum rest under Section 18.D.2.d. *See id.* at 5.

arbitration in writing, in the presence of Captain Hoglander, in the presence of Mediator Jack
Kane, or in communications with Defendants.

28.     Neither Plaintiff nor Defendants intended for the hearing before Arbitrator Javits
to be conducted as a formal arbitration. No witnesses testified before Arbitrator Javits. Neither
party specified an intent to arbitrate the issue of minimum rest under 18.D.2.d before the Javits
session, which is why Plaintiff took no position on minimum rest during the Javits meeting or
thereafter.

29.     On December 7, 2017, Arbitrator Javits circulated a draft award for both parties'
review. A true and correct copy of the draft award is appended as Exhibit B. The draft award
confirmed that Defendants alone took a position on minimum rest under 18.D.2.d, while Plaintiff
only took a position on duty time limits under 18.C.3.b. Ex. B at 2-3.

30.     On December 7, 2017, Arbitrator Javits circulated a second draft award
confirming the parties' agreed-upon 24-26-hour duty period limitations under Section 18.C.3.b.
A true and correct copy of the second draft award is appended hereto as Exhibit C. However,
Arbitrator Javits' draft award also adopted Defendants' requested 22 hours of rest under Section
18.D.2.d, exceeding his limited jurisdiction to consider duty time limits under only 18.C.3.b. *See*
Ex. C at 5.

31.     Plaintiff immediately objected to Arbitrator Javits' draft award. Defendants
offered no objection.

32.     Plaintiff again sought to resolve the dispute with Defendants. Between December
7 and December 22, 2017, Plaintiff had a series of discussions with Defendants' counsel and
Arbitrator Javits. Plaintiff urged Defendants to honor their agreement to consider only the issue
of 18.C.3.b. Defendants' counsel refused to comply and insisted that Plaintiff had agreed to

Defendants' minimum rest proposal and could not now "renege" on those terms. Arbitrator Javits advised that he would consider both parties' arguments.

33.     On December 26, 2017, Arbitrator Javits issued a Final Award. A true and correct copy of the Final Award is appended hereto as Exhibit D. On the issue of augmented crew pilots' maximum duty time under Section 18.C.3.b, Arbitrator Javits awarded a maximum duty period of 24 hours, which could be extended by two additional hours under certain circumstances. Ex. D at 2.

34.     However, in accordance with Defendants' new demands, the Final Award also supplied entirely new language for Section 18.D.2.d, mandating that the "Minimum Rest Period for a twenty-four (24) hour duty period under this subsection is twenty-two (22) hours." Ex. D at 2. Instructively: the final award removed all prior references to Section 18.D while nevertheless awarding Defendants' requested 22 hours of rest under the very same provision. *See id.* Arbitrator Javits further ordered the parties to resume discussion on the possibility of individual pilots waiving 22-hour minimum rest under 18.D.2.d in favor of the longstanding 16-hour rest requirement. *Id.* at 2-3.

35.     Plaintiff suggested multiple ways in which the parties could compromise. Defendants again refused to consider permitting individual pilots to waive additional rest time or agree to any other compromise. According to Defendants, placing that decision in the hands of each pilot would be "giving back" agreed-upon rights to Plaintiff.

36.     Plaintiff's operations and individual pilots will be adversely and significantly impacted by Arbitrator Javits' Award of 22 hours of minimum rest- and by Defendants' refusal to be bound by the plain terms of the parties' CBA and Arbitration Agreement.

37.     It is axiomatic that parties to an arbitration agreement "may limit by contract the issues which they will arbitrate," *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989), and "arbitrators are permitted to decide only those issues that lie within the contractual mandate." *Davis v. Chevy Chase Fin., Ltd.*, 667 F.2d 160, 165 (D.D.C. 1981). Single interest arbitration is no different;[2] parties to such a contract have the power to strictly circumscribe an arbitrator's jurisdiction. *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 860 (3d Cir. 2016). In this single interest arbitration, the parties' agreement made clear their intent to provide Arbitrator Javits with the authority to contemplate section 18.C.3.b of that contract alone. *See* Ex. A at 230. To confirm an award that so much as references 18.D.2.d would abrogate the parties' contract; the Arbitration Award rewrites the entire provision.

38.     When, as here, an arbitrator fails to confine himself to matters within the scope of his jurisdiction, the award is subject to judicial review under the RLA or, in the alternative, under the Federal Arbitration Act ("FAA").[3] 45 U.S.C. § 153(q); *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978). The grounds for vacatur are the same under both statutes. *See Long Island R.R. v. Long Island R.R. Police Benevolent Ass'n*, 1995 U.S. Dist. LEXIS 4176, at *7-8 (S.D.N.Y. Mar. 31, 1995). In short: if "the arbitrator acts outside the scope of his contractually delegated authority," a court may "overturn his determination." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013); *Technologists, Inc. v. Mir's Ltd.*, 725 F. Supp. 2d 120, 124

---

[2] An "interest arbitration" clause in a collective bargaining agreement, as in the instant CBA, "authorizes binding arbitration of deadlocks that occur during renewal negotiations." *West Coast Sheet Metal, Inc. v. NLRB*, 938 F.2d 1356, 1357 (D.C. Cir. 1991).

[3] The FAA relies on the same standard, permitting a district court to vacate an arbitration award when arbitrators have "exceeded their powers." *Technologists*, 725 F. Supp. 2d at 124 (citing 9 U.S.C. § 10(a)).

(D.D.C. 2010) (arbitration awards subject to vacatur when arbitrators "have awarded upon a matter not submitted to them"); *Davis*, 667 F.2d at 165 ("an arbitral award regarding a matter not within the scope of the governing arbitration clause is one made in excess of authority, and a court is precluded from giving effect to such an award"). By providing rest time to all pilots under Section 18.D.2.d, Arbitrator Javits is requiring a contract provision beyond the scope of his narrow authority. This Court is precluded from giving effect to that part of the Arbitration Award providing minimum rest of 22 hours to all pilots under Section 18.D.2.d.

39.     Parties cannot be required to submit to arbitration any matter that they did not agree would be subject to that manner of dispute resolution. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 260-64 (6th Cir. 2010) (issues not arbitrable when CBA expressly excluded them from arbitration without any arguable ambiguity); *Int'l Ass'n of Machinists & Aero. Workers v. AK Steel Corp.*, 615 F.3d 706, 711-13 (6th Cir. 2010) (parties agreed to arbitrate only certain enumerated issues). That the parties intentionally excluded Section 18.D.2.d from arbitration is clear: the plain text of the single issue presented for arbitration makes no mention of that provision at all. *See* Ex. A at 230. Defendants' demand that Arbitrator Javits rewrite Section 18.D.2.d nonetheless carries no legal weight: arbitration "is a matter of consent, not coercion." *Volt*, 489 U.S. at 479. Arbitrator Javits was authorized to provide contract terms for Section 18.C alone, and "an arbitrator may not ignore the plain language of the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). By ignoring the parties' Arbitration Agreement and the text of Section 18.C.3.b, which committed only the issue of pilot duty hours to arbitration, to reach a decision on pilot rest, Arbitrator Javits exceeded his limited authority and "effectively dispense[d] his own brand of

industrial justice." *Nat'l Postal Mail Handlers Union v. Am. Postal Workers Union*, 589 F.3d 437, 441 (D.C. Cir. 2009).

40.     Courts "are neither entitled nor encouraged simply to rubber stamp the interpretations and decisions of arbitrators." *Hamilton*, 817 F.3d at 861. Judicial review of arbitral awards under the RLA is narrow, but "narrow review is not the equivalent of no review at all." *Williams v. Chicago & N.W. Transp. Co.*, 715 F. Supp. 857, 860 (N.D. Ill. 1989). This Court should vacate the portion of the Arbitration Award determining pilot rest, as Arbitrator Javits had no authority to consider the issue and the Arbitration Award improperly alters Section 18.D.2.d of the CBA. This Court should confirm the remainder of the Award, which properly sets pilots' duty hours under Section 18.C.3.b.

## COUNT ONE

**The Arbitration Award Should be Confirmed in Part and Vacated in Part:**
**Arbitrator Javits Properly Decided the Issue of Pilot Duty Hours, But He Exceeded the**
**Scope of His Limited Jurisdiction in Determining the Issue of Pilot Rest**

41.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint and all allegations therein.

42.     Under the Arbitration Agreement, Arbitrator Javits had authority to decide the issue of pilot duty time limits under Section 18.c.3.b.

43.     Accordingly, the portion of the Arbitration Award determining pilot duty hours should be confirmed.

44.     Under the Arbitration Agreement, Arbitrator Javits lacked authority to decide the issue of minimum pilot rest under Section 18.D.2.d.

45.     Plaintiff never otherwise consented to Arbitrator Javits deciding the issue of minimum pilot rest.

46.     In deciding the issue of minimum rest regardless, Arbitrator Javits exceeded the exceeded this scope of his limited jurisdiction.

47.     Accordingly, the portion of the Arbitration Award determining minimum pilot rest under Section 18.D.2.d should be vacated.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court issue an Order:

a.  Vacating, setting aside, and declaring null and void the portion of the Arbitration Award determining pilot rest;

b.  Confirming the portion of the Arbitration Award determining pilot duty hours;

c.  Granting Plaintiff any other relief as the Court deems just and proper.


Dated: December 29, 2017          By:     */s/ Joseph L. Manson III*

                                          Joseph L. Manson III
                                          D.C. Bar No. 206102
                                          LAW OFFICES OF JOSEPH L. MANSON III
                                          600 Cameron Street
                                          Alexandria, VA 22314
                                          Phone: (202) 674-1450
                                          Fax: (703) 340-1642
                                          Email: jmanson@jmansonlaw.com


                                          *Attorneys for Plaintiff Kalitta Air, LLC*